UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Julie A. Walborn, *et al.*,

    **Plaintiffs,**

v.                         Case No. 2:09–cv–532

Aetna Life Insurance Co., *et al.*,      Judge Michael H. Watson

    **Defendants.**

## OPINION AND ORDER

This claim arises from the alleged improper denial of insurance benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. This matter is before the Court on cross-motions for judgment on the administrative record. (Defs.' Mot. for J. on Admin. R. (Doc. 26); Pl.'s Mot. for J. (Doc. 29).) Plaintiff seeks to recover accidental death and personal loss benefits in the amount of $100,400, and a passenger restraint benefit in the amount of $15,060.

### I. Facts

Plaintiff Julie Walborn filed this matter on behalf of herself as a plan beneficiary within the meaning of ERISA and as the Executrix of the Estate of her deceased husband Paul A. Walborn, which created two Plaintiffs in this case. Ms. Walborn does not set forth any individual claims different from the claims of the estate. For simplicity, she will be referred to as Plaintiff. The Court notes Defendants seek judgment against both Ms. Walborn in her individual capacity and as the Estate. (Defs.' Mot. for J. on

Admin. R. (Doc. 26) 2 n.1.)

Plaintiff's decedent husband Paul Walborn worked for Honda of America Mfg., Inc. ("Honda") for twenty-two years (Admin. R. ("AR") (Doc. 27-1) 1, 4) until his death from blunt trauma to his head and chest in an ultralight airplane accident on May 27, 2007. (AR 11.) It is undisputed that Mr. Walborn was a Honda employee and participant in the employee welfare benefit plan (the "Plan") sponsored by Honda at the time of his death. The Plan provided, in relevant part, a life insurance death benefit and accidental death and personal loss ("AD & PL") benefits funded by a group life insurance policy issued by Aetna to Honda, Policy No. 657189 (the "Policy"). (AR 23–71.) Mr. Walborn's widow, Julie Walborn ("Plaintiff"), is the beneficiary of Mr. Walborn's insurance policy with Aetna Life Insurance Company ("Aetna") pursuant to his employment with Honda. (AR 3, 15.)

The AD & PL section of the Policy provides that a benefit will be paid for a bodily injury caused by an accident causing the loss of life. (AR 27.) A limitation ("the Limitation") to the AD & PL, however, states:

> no benefits are payable for a loss caused or contributed to by . . . [a]ir or space travel. This does not apply if a person is a passenger with no duties at all on an aircraft being used only to carry passengers (with or without cargo).

(AR 32.) The AD & PL coverage also provides for a Passenger Restraint Benefit payable if:

> A covered loss of life occurs solely as a direct result of an accident involving a motor vehicle while the person:
> •is an occupant of the motor vehicle; and
> •at the time of the accident is properly using a passenger restraint; and
> •if the driver has, at the time of the accident, a valid driver's license[.]

(AR 29.) The Policy defines "motor vehicle" as "a vehicle that is a registered and licensed vehicle and is: a passenger land vehicle of pleasure design which includes autos, vans, four-wheel drive vehicles, self-propelled motor homes; or a truck of commercial design." (AR 38.)

Aetna paid Mr. Walborn's death benefits in the amount of $100,400 to Ms. Walborn,[1] but denied the AD & PL benefits and subsequent request for the Passenger Restraint Benefit. (AR 19–21, 104–05.) In its July 16, 2006 letter to Ms. Walborn, Aetna's stated reason for denying the AD & PL benefits—which would also amount to $100,400 (AR 20, 67)—was that Mr. Walborn's death resulted from an ultralight airplane accident and thus was "caused or contributed to by air travel" within the meaning of the Limitation. (*Id.*) Likewise, in its February 11, 2009 letter to Mr. Steven Fansler, Esq., attorney to Ms. Walborn, Aetna denied the Passenger Restraint Benefit because the ultralight Mr. Walborn occupied at the time of his death was not a "motor vehicle" as defined by the Policy or as commonly defined by Merriam-Webster's Dictionary. (AR 104–05.)

Plaintiff alleges that Mr. Walborn's only notice of the terms of the Policy was a summary plan description ("SPD") provided by Honda which did not contain the air and space travel limitation cited by Aetna as the basis for denial of the claim. (Pl.'s Mot. for J. (Doc. 30) 3.) Defendants counter that the SPD excerpt Plaintiff attached to her motion was from the SPD in use between January 2000 and March 2003 ("the 2000

---

[1] Mr. Walborn's salary was listed as $50,128 per year. The Schedule of Life Insurance provides that death benefits will be calculated as 200% of an associate's basic annual earnings rounded to the next higher $100. (AR 66.) Thus, 200% x $50,200 = $100,400 for the purpose of Mr. Walborn's death benefits.

SPD"), which was superseded by a new SPD ("the 2003 SPD") that was in effect at the time of Mr. Walborn's death in 2006. (*See* Defs.' Resp. in Opp'n (Doc. 33) Ex. A 2.) The 2003 SPD contained the air and space travel limitation. (*Id.* at 38 ("Accident benefits will *not* be paid for any loss caused by or related to: . . . [a]ir or space travel.").) Both the January 2000 SPD and the March 2003 SPD state that the Passenger Restraint Benefit (a.k.a. the Seat Belt Benefit) would be paid only if loss of life results from accidental injuries "sustained while driving or riding in a private, four-wheel passenger car with a securely fastened seat belt[.]" (Pl.'s Mot. for J. (Doc. 30) Ex. A 4; Defs.' Resp. in Opp'n (Doc. 33) Ex. A 37.)

## II. Standard of Review

District courts review a plan administrator's denial of ERISA benefits de novo, unless as is the case here, the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 613 (6th Cir. 1998) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)); *see also Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 456 (6th Cir. 2003). When the fiduciary—in this case, Aetna—has such discretionary authority, its decision is reviewed under the "highly deferential" arbitrary and capricious standard. *Sanford v. Harvard Indus.*, 262 F.3d 590, 595 (6th Cir. 2001) (citing *Yeager v. Reliance Std. Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996)). So long as the fiduciary's decision was "rational in light of the plan's provisions", courts must uphold the denial of benefits when applying the arbitrary and capricious standard. *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003) (citing *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000)). In

other words, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.*

Both Plaintiff and Aetna appear to acknowledge that the Policy gave Aetna sufficient discretionary authority to warrant an arbitrary and capricious, as opposed to de novo, standard of review. (*See* Pl.'s Resp. (Doc. 34) 2; Defs.' Mot. for J. on Admin. R. (Doc. 26) 9.) The Policy expressly grants Aetna discretionary authority to deny benefits and to construe terms. The Policy provides that:

> For the purpose of section 503 of Title 1 of . . . ERISA, Aetna is a fiduciary with complete authority to review all denied claims for benefits under this policy. . . . In exercising such fiduciary responsibility, Aetna shall have discretionary authority to: determine whether and to what extent employees and beneficiaries are entitled to benefits; and construe any disputed or doubtful terms of this policy.

(AR 64.) Because of this, however, an additional element of the arbitrary and capricious standard of review is that an actual conflict of interest exists where the entity adjudicating the claim is also the entity responsible for paying the benefits. *Killian v. Healthsources Provident Administrators, Inc.*, 152 F.3d 514, 521 (6th Cir. 1998). This conflict does not, however, alter the standard of review. Instead, it becomes another factor in analyzing whether the plan administrator's decision was arbitrary and capricious. *See Firestone Tire & Rubber*, 489 U.S. at 115.

Therefore, this Court will review Aetna's decision under the arbitrary and capricious standard.

### III. Discussion

#### A. Accidental Death and Personal Loss Benefits

Plaintiff alleges that the decedent, Mr. Walborn, was never informed of the air

and space travel exclusion prior to his death in 2006. (Pl.'s Mot. for J. (Doc. 30) 5 ("His claim has been denied based upon an exclusion or limitation never made known or available to him.").) Her husband, Plaintiff contends, "knew nothing about [the air and space travel] exclusion." (Pl.'s Resp. (Doc. 34) 2.) Plaintiff acknowledges that Mr. Walborn received the SPD. *Id.* ("We know that Honda associates received information from Honda in Honda's 'Explanation of Benefits.'") The Court notes the "Explanation of Benefits" or the "Guide to Your Benefits" is synonymous with the Summary Plan Description. (*See, e.g.,* Defs.' Resp. in Opp'n (Doc. 33) Ex. A 4.) The problem, Plaintiff argues, is simply that the information contained in Aetna's Policy was never relayed to Honda's employees via the SPD. *Id.* Though citing no ERISA case law, Plaintiff appears to argue that where the terms of the SPD conflict with those in the Policy itself, the terms of the SPD must control. *See, e.g., Haus v. Bechtel Jacobs Co., LLC,* 491 F.3d 557, 564 (6th Cir. 2007) (citing *Edwards v. State Farm Mut. Auto. Ins. Co.,* 851 F.2d 134, 136 (6th Cir. 1988) ("where statements made in summary plan descriptions conflict with statements made in the plans themselves, the summary plan descriptions are controlling"). Plaintiff avers that since the Policy limits the payment of AD & PL benefits for types of accidental death that the SPD does not, the terms of the SPD should govern, and the air travel limitation would not apply. *Id.*

In arguing that there is a conflict in terms, however, Plaintiff relies on the 2000 SPD, an outdated and inapplicable version of the SPD. (*See* Defs.' Resp. in Opp'n (Doc. 33) Ex. A 2.) The SPD ("the 2000 SPD") which Plaintiff attaches to establish the conflict in terms applied only to the period between January 2000 and March 2003, at which point it was superseded by an updated SPD ("the 2003 SPD"). *Id.* The updated

SPD, in effect at the time of Mr. Walborn's death, *did* mention the air travel exclusion. (Defs.' Resp. in Opp'n (Doc. 33) Ex. A 38) ("Accident benefits will *not* be paid for any loss caused by or related to: . . . [a]ir or space travel.") Thus cases such as *Edwards*—holding that where statements made in summary plan descriptions conflict with statements made in the plans themselves, the summary plan descriptions are controlling—are inapplicable here because no conflict exists between the Policy and the relevant 2003 SPD. The terms of the Policy and the relevant 2003 SPD agree in their entirety regarding the air travel limitation. Accordingly, any conflict that might have existed between the 2000 SPD and the Policy is irrelevant to the disposition of this case.[2]

As this Court may only review the decision in light of the Administrative Record, the Court finds, notwithstanding Aetna's conflict of interest, Aetna's benefit determination was not arbitrary or capricious as its explanation for denial of the AD & PL was reasoned and based on the evidence. The documentation in the Administrative Record evidences that Paul Walborn died when an ultralight plane he was piloting solo crashed into the ground. Aetna's determination that Mr. Walborn's death was "caused or contributed to by . . . [a]ir or space travel" within the meaning of the Limitation—and

---

[2] It is possible, though implausible given the language of the briefs, that what Plaintiff is arguing is that Honda never distributed or made available the 2003 SPD prior to Mr. Walborn's death in 2006 in violation of ERISA's disclosure and notice requirements for SPD modifications, as listed in 29 U.S.C. § 1024(b). (*See* Pl.'s Resp. (Doc. 34) 2 ("The Honda 'Explanation of Benefits' was the only document received by the Honda associate . . . the Honda 'Explanation of Benefits' does not exclude Plaintiff's decedent's cause of death as a reason to deny accidental death payment.").) Plaintiff, however, does not bring a claim for nondisclosure. Rather, it appears that Plaintiff mistakenly believed that the 2000 SPD was the SPD in effect at the time of Mr. Walborn's death. Throughout her briefs, Plaintiff refers only to a disparity between the language of the Policy and the 2000 SPD, and not any disparity between the 2000 and 2003 SPDs or the 2003 SPD and the Policy. (*See, e.g.,* Pl.'s Resp. (Doc. 34) 1 ("[T]he problem is that Aetna had exceptions or exclusions which are characterized one way, but the Honda "Explanation of Benefits" characterized them another way.").)

thus a basis for denying AD & PL benefits—was in its discretion and rational in light of the Policy language and the Administrative Record before it at the time it made its benefits determination.

## B. Passenger Restraint Benefit

Plaintiff also argues that the Passenger Restraint Benefit was wrongfully withheld, since her husband was wearing a passenger restraint at the time of the crash, and since the ultralight airplane was a "motor vehicle." (Pl.'s Mot. for J. (Doc. 30) 6.)

Plaintiff's argument is without merit. In urging this Court to reverse Aetna's denial of the Passenger Restraint Benefit, Plaintiff notes that "[t]he ultralight is defined by the Federal Aviation Authority [sic] as a motorized vehicle, but not an aircraft." Irrespective of the technical definition given by the Federal Aviation Administration, this Court reviews Aetna's denial of benefits under an arbitrary and capricious, rather than de novo, standard. *See Majestic Star Casino*, 581 F.3d 355, 365 (6th Cir. 2009). Whether or not there is some support for interpreting "motor vehicle" as including ultralight airplanes in general, the Policy itself defines "motor vehicle" as "a vehicle that is a registered and licensed vehicle and is: a passenger *land* vehicle of pleasure design which includes autos, vans, four-wheel drive vehicles, self-propelled motor homes; or a truck of commercial design." (AR 38 (emphasis added).) In addition, both the 2000 and 2003 SPDs state that the Passenger Restraint Benefit would be paid only for accidental injuries sustained "while driving or riding in a private, four-wheel passenger car . . . ." (Pl.'s Mot. for J. (Doc. 30) Ex. A 4; Defs.' Resp. in Opp'n (Doc. 33) Ex. A 37.)

Even if it could be said that Plaintiff's interpretation of the term "motor vehicle" is equally rational in light of the SPD and the Policy, the arbitrary and capricious standard

of review would compel this Court to accept Aetna's interpretation. See *Mitzel v. Anthem Life Ins. Co.*, 351 F. App'x 74, 81–82 (6th Cir. 2009) (noting that when the plan administrator possesses discretionary authority, and thus when there is an arbitrary and capricious standard of review, courts must break interpretive ties in favor of the plan administrator or fiduciary). But the interpretation advocated by Plaintiff is not equally rational: it is at odds with the unambiguous meaning of the language in the Policy and the SPDs. See *Williams*, 227 F.3d at 711 ("[Courts] must give effect to the unambiguous terms of an ERISA plan.") An ultralight airplane does not fall within the definition of "motor vehicle" as enumerated in Policy's glossary of terms (AR 38), and it is not a four-wheel passenger car, as mentioned in the SPDs. (See Pl.'s Mot. for J. (Doc. 30) Ex. A 4; Defs.' Resp. in Opp'n (Doc. 33) Ex. A 37.) Denying the Passenger Restraint Benefit was neither arbitrary nor capricious.

## IV. Disposition

Based on the above, the Court **GRANTS** Defendants' motion for judgment as a matter of law on the administrative record (Doc. 26), and **DENIES** Plaintiff's motion for judgment as a matter of law (Doc. 29). The Clerk shall enter final judgment in this case in favor of Defendants and against Plaintiffs, dismissing Plaintiffs' claims with prejudice. The Clerk shall remove Docs. 26 and 29 from the Court's pending motions list.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**